## Public Service Commission v. Williams

*John Fox Weiss, E. E. Mather, P. H. Rhoads,* and *S. G. Miller,* for plaintiff.

*Mark T. Milnor,* for defendant.

WICKERSHAM, J., May 23, 1935.—The petition of the Public Service Commission alleges, inter alia, that on September 28, 1934, it filed its bill of complaint against William H. Williams, the defendant, wherein the petitioner averred that the defendant had been operating a toll foot bridge as a public service company in the villages of Jacob's Creek and Van Meter, Westmoreland County, in violation of the Public Service Company Law, and of a "cease and desist" order of the petitioner, and prayed that an injunction might issue restraining the defendant and his agents from operating the said toll foot bridge as a public service company. It was further averred that on September 28, 1934, this court ordered that a pre-

liminary injunction issue as prayed for; that upon hearing said injunction this court granted a final injunction restraining the said William H. Williams from operating a toll foot bridge as a public service company in the aforesaid villages, which was personally served upon the defendant October 26, 1934; that in open violation of the above described order the defendant has continued, since October 24, 1934, to operate the said toll foot bridge as a public service company and has collected toll for the use of said bridge from various persons on various dates; and that since October 24, 1934, the petitioner has not granted authority or permission to the defendant to operate in any manner as a public service company. The petitioner prayed that an attachment issue against the defendant, William H. Williams, to enforce the order of this court.

Upon presentation of said petition a rule was granted upon the said defendant to show cause why an attachment in contempt should not issue as prayed for in said petition, returnable January 14, 1935.

To said rule so granted the defendant filed an answer admitting that he was served with the bill of complaint but denying he had anything to do with the toll foot bridge mentioned in said petition; alleging that he is not operating a toll foot bridge as a public service company in said villages, and upon service of the injunction upon him discontinued any and all connection whatever he might have had at that time with the operation of said bridge. He denied the whole of paragraph 6 of plaintiff's petition and avers that for many years past as well as the times hereinabove referred to he has had no ownership, management or connection with the said toll foot bridge; that he has not operated either as owner, agent, servant or employee the said bridge, and especially avers that he has not collected toll as a public service company for the use of said bridge from any person whatsoever, and that he has in no way violated any order of this court

whatsoever; and that he has not in any manner either by act or deed violated the order of this court by collecting toll for the use of said foot bridge as a public service company in which he had no interest or concern whatsoever.

This case came on to be heard and testimony was taken from which we make the following:

*Findings of fact*

1. Some time prior to October 1926, certain persons, registered under the Fictitious Name Act as "Jacob's Creek Improvement Association", erected a foot bridge across the Youghiogheny River between the Village of Jacob's Creek on the east bank of said river and the Village of Van Meter in Rostraver Township, Westmoreland County, on the west bank of said river.

2. On March 7, 1927, the defendant, William H. Williams, and others, filed an application asking the Public Service Commission of Pennsylvania to approve the operation by them of a toll bridge, being the same bridge as that here involved. This application was dismissed by the commission in February 1928.

3. On March 15, 1929, the defendant filed an application in his own name with said Public Service Commission for permission to operate the bridge as a toll bridge. In this application he alleged he owned the bridge and swore to the truth of the allegations as well as to the application. The commission refused his application.

4. The report and order of the commission dated July 9, 1929, was served upon the defendant and since he took no appeal is conclusive upon him both as to the facts stated therein and as to the reasonableness of the finding.

5. In January 1930, a bill of complaint was filed with the commission by the Jacob's Creek Ferry Company alleging that defendant, doing business as Jacob's Creek Improvement Association, had been operating the bridge for hire for 3 years. This complaint was sustained by the commission on March 31, 1931.

6. In that case, the respondent, being the defendant in

the instant case, claimed that he operated the bridge not as an individual but as an officer of the Jacob's Creek Improvement Association and that the service has been limited to the members of that association only.

7. The commission found that the so-called association was not a bona fide organization but rather a device to collect tolls for the use of the bridge, and an order to this effect was served upon the defendant.

8. In May 1930, the defendant, in his own name, applied to the commission for the right to operate the bridge as a toll bridge, which application was refused by the commission on March 31, 1931.

9. In the beginning, cards were issued to users of the bridge; then keys were issued by means of which a locked gate at the end of the bridge could be opened; still later a turnstile operated by tokens or 5c pieces was installed; but since 1931 defendant has charged 75c or $1.00 per month for the right to pass over his land for the purpose of crossing the bridge.

10. To reach the eastern or Jacob's Creek end of the bridge it is necessary to pass through an enclosed portion of defendant's house. In this portion of the house there is a chair and a table at which defendant or his agent sits on certain days of each month to receive the fee of 75c or $1.00.

11. The land at the western end of the bridge is leased by the Jacob's Creek Improvement Association from the Pittsburgh Coal Company. Access to or from the bridge at that end is open to the public.

12. Recently repairs were made to the bridge but paid for by the Jacob's Creek Improvement Association from funds in the hands of its treasurer. There is no evidence that defendant has at any time made or paid for any repairs to said bridge.

13. On application of the Public Service Commission of the Commonwealth of Pennsylvania this court granted an injunction directing the said defendant to cease and

desist from "operating the toll foot bridge as a public service company" in the Villages of Jacob's Creek and Van Meter, Westmoreland County, on October 24, 1934.

## Questions Involved

1. Under the pleadings and the testimony taken at the hearing before the court does it clearly appear that the defendant is operating the said bridge and taking tolls therefrom in violation of the injunction granted by this court?

2. Under the pleadings and testimony is the said William H. Williams acting in contempt for disobedience to the injunction granted by this court?

## Discussion

It will be noted that the defendant was restrained by this court from operating a toll foot bridge as a "public service company". It appears from the testimony that the Jacob's Creek Improvement Association is the owner of the foot bridge involved in this case and that the defendant has nothing whatever to do with the same. The only function of the association at this time is to repair the bridge and pay the rental on the Van Meter side of same from funds remaining in the hands of the treasurer since they ceased to charge toll.

It is contended by the Commonwealth that the defendant controls the bridge approach at the Jacob's Creek or eastern end and that he who controls the approach controls the bridge since the use of any bridge is dependent upon the availability of the approach thereto. It is well established that the approach to a bridge forms a part of the bridge: Penn Township v. Perry County, 78 Pa. 457, 459.

The fact remains, however, that anyone wishing to cross the bridge under discussion must pass over the defendant's property and through a part of his house. This fact is clearly established by the evidence. Those desiring to use the bridge regularly are required to sign a

"franchise lease"—so to do, and in consideration of this privilege the lessee agrees to pay an annual rental of $9 or $12, payable $.75 or $1 per month, in advance. The lessee paying $12 per year is entitled to the additional privilege as follows: "This lease permits all dependents of the lessee not gainfully employed. . . ."

It appears from the evidence that anyone desiring to cross the lands of defendant must sign a lease. We find no evidence that anyone is allowed to cross the land of the defendant unless he signs a lease similar to the one from which we have quoted, except, perhaps, on rare occasions.

We think it is well established that a man under the law has the right to use his property in any lawful manner he desires so long as the rights of others are not violated: 50 C. J. 779, sec. 54, citing Hall's Estate, 20 Dist. R. 876. See also Morrison et al. v. Semple et al., 6 Binn. 94, where property is defined to be the dominion or indefinite right of user and disposition which one may lawfully exercise over particular things or subjects, and generally to the exclusion of all others; it is ownership, the exclusive right of any person freely to use, enjoy and dispose of any determinate object; it includes anything that is the subject of ownership. Abundant authority supports this definition of property.

Nor was the defendant the originator of the system of charging for permission to cross his property. It appears from the evidence that A. S. Campbell, mortgagee of the Williams property, was the first to start this lease agreement and that when she died the defendant continued her practice of charging rental for use of the land to compensate him for his inconvenience and disturbance. It was testified that this house was built prior to 1931 and that those who desired to use the bridge must traverse the kitchen of defendant's house.

We are of opinion that unless the defendant is the owner or operator of said bridge, which has been determined by us against this contention, it must appear that

he is acting as a "public service company". We find no evidence that he is so acting. On the contrary he appears only to have been making a charge for the use of his property by those miners who desired to use the bridge in order to get to their work on the opposite side of the Youghiogheny River. In so functioning it cannot be said that he is acting as a public service company. He is acting individually and not as a company. We are unable to understand how the defendant, acting as an individual, and charging only for the use of his private property, can be held to be acting as a public service company. We are of opinion that he has not been so acting. Moreover the evidence shows that he exercises no dominion whatever over the bridge property.

Applying the principles of law to which we have referred to the facts in the case, are we able to determine whether what the defendant is doing is in violation of the injunction granted in this case? To justify adjudging the defendant guilty of contempt it must be established by clear and satisfactory evidence that he has violated the injunction as expressed in the decree. The order, as we have above stated, restrains the defendant "from operating a toll bridge" as a "public service company". We think it has not been clearly and satisfactorily proved that the defendant has violated the injunction. To adjudge one guilty of contempt for the alleged violation of an order it must be so clearly expressed that when applied to the act complained of it will appear with reasonable certainty that it has been violated: 13 C. J. 15. See also Bauer v. Byrd, 245 Pa. 441. In Capuzzi's Estate, 298 Pa. 71, 76, it was held:

"In contempt proceedings for enforcement, a decree will not be expanded by implication or intendment beyond the meaning of its terms when read in light of the issues and the purpose for which the suit was brought; and the facts found must constitute a plain violation of the decree so read. . . .

"One cannot be adjudged in contempt for violating a decree of court unless the decree specified with reasonable certainty what is required to be done."

With these principles in mind we think the petition of the Public Service Commission for an order adjudging the defendant to be in contempt cannot be granted for it has not been established by evidence which is clear and satisfactory that the defendant is in contempt.

Counsel for the Public Service Commission relies upon New Street Bridge Co. v. Public Service Commission et al., 271 Pa. 19. This is a decision relating to the power of the Public Service Commission to fix rates and does not apply in any way to the instant case. Counsel also relies, as we have heretofore stated, upon Penn Township v. Perry County, supra, which holds that the approaches to a bridge are parts of the bridge. This is undoubtedly the law when approaches are owned and controlled by the bridge company; but in the instant case, as the facts now appear by the evidence, the approaches to this bridge are owned by William H. Williams, the defendant, as a private individual; and prior to his ownership it was owned by another person who also charged a monthly rental to those who desired to pass over her property in order to use the bridge. It therefore clearly appears that the approaches to this bridge are not owned by the Jacob's Creek Improvement Company, the real owners of the bridge. We think therefore, that Penn Township v. Perry County cannot be relied upon to control the instant case.

For the reasons heretofore stated we are of opinion that the rule to show cause why the defendant should not be held in contempt must be discharged.

And now, May 23, 1935, it is ordered, adjudged and decreed that the rule to show cause why the defendant, William H. Williams, should not be adjudged to be in contempt for violating the injunction issued by this court is discharged; the costs of this proceeding to be paid by the plaintiff.

From Homer L. Kreider, Harrisburg.